[Civil No. 1889. Filed July 5, 1921.]

[198 Pac. 1103.]

## WEST COAST CATTLE COMPANY, a Corporation, Appellant, v. F. F. AGUILAR, Appellee.

1. ANIMALS—INSTRUCTION SUBMITTING LIABILITY FOR CATTLE LOST BEFORE DELIVERY TO AGISTER HELD ERRONEOUS.—In an action to recover the value of cattle which plaintiff delivered to defendant to be kept by defendant and sold for plaintiff's account, where the evidence showed that defendant received the cattle from another corporation without account or check, and it was undisputed that some of the cattle not accounted for had died or become lost before they were delivered to defendant, an instruction submitting to the jury the question whether those cattle died or were lost because of the negligence of the defendant was erroneous.

2. NEW TRIAL—DENIAL ON REMITTITUR HELD ERRONEOUS WHERE ITEMS ALLOWED BY JURY COULD NOT BE IDENTIFIED.—In an action for the value of cattle delivered to defendant to be cared for and sold on plaintiff's account, where the court had submitted the issue of defendant's liability for cattle which had died or become lost before delivery to defendant, and also the question whether defendant was negligent in permitting the Mexican military authorities to take some of the cattle from his possession, a ruling of the trial court denying a new trial after plaintiff remitted the excess of the amount allowed by the jury over the amount properly allowable for the cattle taken by the military authorities, assumed that the jury found the defendant liable for those cattle, and not that it allowed plaintiff for the cattle which died before they were delivered to defendant, and was erroneous.

APPEAL from a judgment of the Superior Court of the County of Santa Cruz. S. L. Pattee, Judge. Judgment reversed and new trial granted.

Messrs. Kingan, Campbell & Conner, for Appellant.

Mr. S. F. Noon and Mr. Duane Bird, for Appellee.

ROSS, C. J.—Plaintiff-appellee sued defendant-appellant for damages for breach of contract. It is alleged in the complaint that plaintiff, under a writ-

ten contract dated February 10, 1915, turned over to defendant large numbers of mixed cattle to be cared for and sold as soon as possible by defendant, who was to account to plaintiff therefor at named prices; that the defendant has failed and refused to account for 770 head, valued at $12,850.

The defendant, in its answer, admits the contract as alleged; admits taking over large numbers of cattle from plaintiff; says that it has performed its part of the contract by selling and accounting for many of said cattle.

It is further alleged that defendant's ranches and plaintiff's cattle were during all the time in the republic of Mexico, and that during the year 1915, and for some time prior and subsequent thereto, there existed in said republic a state of civil war; that many of plaintiff's cattle were in such a bad condition when turned over to defendant, from hard handling or other causes, that they died without defendant's fault; that others were forcibly taken from defendant by the military forces of the state of Sonora; that the fences of the pastures in which such cattle and others were kept were cut and said cattle stolen and driven away by marauding bands or parties; that it had in its possession at the time of the bringing of said suit, February, 1918, not to exceed sixty head of plaintiff's cattle, which it is ready and willing to redeliver to plaintiff, or as soon as possible ship and dispose of and account to plaintiff for the proceeds thereof.

The case was tried to a jury, and a verdict for plaintiff for $4,800 was returned. Upon motion for a new trial, the court came to the conclusion that the verdict was excessive in the sum of $960, and ordered a new trial unless plaintiff, within thirty days, should agree to deduct that amount from the verdict. The

plaintiff filing his consent to such reduction, judgment was entered for $3,840, and defendant appeals.

The defendant complains of the court's instructions, and also of the court's order refusing a new trial. Before stating in what particular, it is necessary to state such evidence as will make defendant's assignments intelligible.

The Alamo Cattle Company, a Mexican corporation, on May 16, 1914, entered into the same kind of an arrangement or contract with the plaintiff as the one the plaintiff had with the defendant, West Coast Cattle Company, and, under its contract, the Alamo Company had taken over 1,909 head of cattle from plaintiff. It had, prior to the date of defendant's contract, sold and accounted to plaintiff for 757 head. On February 10, 1915, the Alamo Company turned over whatever was left of the 1,909 head to the defendant company, the latter company acknowledging the receipt by attaching its signature to the receipt that the Alamo Company had executed to the plaintiff on May 16, 1914. The cattle, however, were not counted or checked. There should have been, in the absence of any loss, 1,152 head in the turn-over.

Plaintiff, in addition, turned over to defendant company in August 1915, 335 head. Defendant sold and accounted for to plaintiff 717 head. All told, plaintiff turned over to the Alamo Company and the defendant 2,344 head of cattle, and the two companies had accounted for 1,474, leaving unaccounted for 770. It was for the value of these that the plaintiff sued defendant.

While the Alamo Company and defendant company were officered and controlled largely by the same persons, and associated together in order to protect plaintiff's cattle, as alleged in defendant's answer, it is conceded that they are two distinct concerns, and

that neither is liable for the acts or conduct of the other.

This distinct or separate liability should be borne in mind, therefore. If any of the 770 head sued for were converted by, or lost or destroyed because of the negligence of, the Alamo Company, it, and not the defendant, should respond in damages, the defendant being liable in damages to plaintiff for only such cattle as it may have converted or by its negligence lost after the cattle were turned over to it. Of the 770 cattle sued for, it is unquestioned that 100 bulls died while in the care and possession of the Alamo Company and before defendant assumed any control or care of them. The evidence also shows, as defendant asserts—and this assertion is not questioned by plaintiff—that some 300 or 400 head of other cattle died prior to February 10, 1915, and before defendant took possession of plaintiff's cattle under its contract of that date. Deducting the losses occurring before defendant's liability began, on the basis of the above figures—100 bulls and 300 or 400 other cattle—from the 770 sued for, we have 270 that defendant should account for, either in cash or by explanation exculpating it from negligently suffering their loss or destruction.

Notwithstanding the evidence seems to be all one way, and to the effect that defendant had nothing to do with the 100 bulls that died, still the court submitted to the jury the question as to whether they died because of the negligence of the defendant, implying thereby, of course, the defendant might be held liable for the value of the 100 bulls. The instructions are so worded also as to have allowed the jury to consider defendant's liability for the other 300 or 400 cattle that died while in the possession and control of the Alamo Company, or at least that is the defendant's contention. They were part of

the cattle being sued for, and, although the evidence showed no liability on the part of the defendant, the jury was not advised of that fact.

The verdict was for $4,800. The jury had been told by the court that, if they found in favor of plaintiff, they should assess his damages at $16 a head, the lowest price fixed under the contract. The jury, therefore, must have found defendant liable for 300 head of the 770 sued for. The court, in passing upon the motion for a new trial, stated:

"The evidence justifies the conclusion, taking the undisputed figures, that at least 225 head of cattle were taken by the alleged military forces. Others were lost in other manners, amounting to practically, using the evidence most favorably to the defendant, of at least fifteen head, making a total of 240 head, the liability for which was a question to be determined by the jury."

It will be noted that the court has undertaken to say what 240 head should be charged against defendant. Remembering that defendant's contention in its answer and evidence was that some of the cattle sued for had been taken by military forces, and some stolen, and others had died because of their poor condition when turned over to it, and that all of such losses were without its fault, and that the jury were told these defenses were good if established, it is not at all certain that the jury's conclusion was that defendant had negligently allowed the military to take 225 head of said cattle. The 300 head the jury charged against defendant may have been made up of these 225, or the jury might have felt defendant was helpless to resist the military and without fault in connection with this loss. The 100 bulls may have entered into their verdict. It was the duty and province of the jury to determine from the evidence whether defendant had failed to exercise proper and reasonable care in looking after and disposing of plaintiff's

cattle, or whether he had so negligently and care-
lessly performed his duty in that regard as to be-
come liable to plaintiff in damages, and of course in
that connection they necessarily found some of the
770 were lost (470 to be accurate) without defend-
ant's fault, and 300 with defendant's fault. Since
the jury were not restricted by the instructions to a
consideration of losses and damages occurring to
cattle subsequent to their possession being turned
over to defendant, and since it is possible they may
have charged defendant with losses that occurred
while the cattle were in the possession of the defend-
ant's predecessor in their management and care, we
do not think it was a proper case for the court to
order a *remittitur*. It is not a case of excessive
damages, but one in which it is not possible to iden-
tify the particular wrong or wrongs for which the
jury assessed damages.

For the errors noted in the foregoing opinion, the
judgment is reversed and the cause remanded, with
directions that defendant be granted a new trial.

BAKER and McALISTER, JJ., concur.